| | |
|---|---|
| JAMES W. WHITE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:04-CV-020 |
| ) | (Phillips/Shirley) |
| HITACHI, LTD., HITACHI GLOBAL ) | |
| STORAGE TECHNOLOGIES, INC., ) | |
| TECHNOLOGIES NETHERLANDS B.V., ) | |
| and HITACHI METALS, LTD., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM & ORDER

This matter is before the undersigned pursuant to 28 U.S.C. § 636(b), the Rules of this Court, and by the Orders [Docs. 59, 73] of the Honorable Thomas W. Phillips, United States District Judge, for disposition of Plaintiff's Motion for Protective Order [Doc. 37]; Plaintiff's Motion to Compel Discovery [Doc. 40]; Defendants' Cross-Motion for Protective Order and Request for Telephonic Oral Argument [Doc. 48]; and Plaintiff's Motion for Expedited Telephonic Status Conference [Doc. 68]. The undersigned conducted a hearing on these motions on February 14, 2005.

For the reasons set forth below, Plaintiff's Motion for Protective Order [Doc. 37] is **GRANTED**; Plaintiff's Motion to Compel Discovery [Doc. 40] is **GRANTED**; Defendants' Cross-

Motion for Protective Order and Request for Telephonic Oral Argument [Doc. 48] is **DENIED**; and

Plaintiff's Motion for Expedited Telephonic Status Conference [Doc. 68] is **DENIED AS MOOT**.[1]

## I. Plaintiff's Motion for Protective Order

The parties have generally agreed upon a Protective Order to control the production of confidential information in this case. The parties cannot agree, however, whether Dr. White may receive confidential information from the Defendants in order to assist his counsel and to serve as his own expert in this case. Dr. White proposes that the following language be included in the Protective Order:

> Notwithstanding the foregoing, Plaintiff James W. White shall have the status and the access to information of an in-house counsel of Paragraph 8(a)(i). A party or non-party producing "CONFIDENTIAL" or "CONFIDENTIAL – (OUTSIDE) ATTORNEYS ONLY" materials may petition the Court for a supplemental protective order denying Dr. White access to such information if good cause exists and such order is drawn to narrow, specific information. Under no circumstances will Dr. White be denied access to information reasonably necessary to analyze Defendants' products for infringement or reasonably necessary to defend against any allegation that a claim of the patent-in-suit is invalid.

Dr. White contends that the Defendants unreasonably seek to prevent him from receiving much of their confidential information and document production, which would force him to retain unnecessary expert witnesses to review such evidence. Dr. White contends that such actions would

---

[1] Although the undersigned has recommended that the District Court stay proceedings with respect to the issues related to the infringement and validity of the '519 patent, the undersigned will nevertheless proceed to rule on the pending discovery motions. If the District Court adopts the undersigned's Report and Recommendation and thus stays the proceedings (with the exception of the litigation regarding the licensing issue), the rulings set forth in this Memorandum and Order, to the extent that the subject of these discovery disputes are stayed, shall not go into effect until after the resolution of the reexamination proceedings.

increase his litigation costs, deny him the benefit of his own expertise, and would improperly prevent him from assisting his own counsel in the preparation of the case. [Doc. 37].

Defendants oppose Dr. White's motion and move for the entry of a protective order barring Dr. White from viewing highly confidential "Attorneys Only" materials, just as the Defendants have agreed to bar any non-attorney employees from viewing Dr. White's "Attorneys Only" material and to bar in-house counsel from viewing "Outside Attorneys Only" material. [Doc. 48]. Defendants contend that they may suffer competitive harm if Dr. White is allowed to view their highly confidential materials. They allege that Dr. White is a competitor and/or potential competitor of Defendants, and that Dr. White's desire to be his own expert should not outweigh the serious risk of competitive harm that would result if he were allowed to view the Defendants' confidential technical materials. [Doc. 43].

In support of their cross-motion for protective order and opposition to Plaintiff's motion, Defendants cite Safe Flight Instrument Corp. v. Sundstrand Data Control Inc., 682 F. Supp. 20 (D. Del. 1988). In that case, the plaintiff argued that its president, Mr. Greene, who was an aeronautical engineer with over sixty aeronautical patents, should have access to the defendant's confidential materials, so that he could assess their relevance and make an educated business decision as to whether to pursue the litigation. Id. at 21. The defendant objected, arguing that Mr. Greene might, consciously or subconsciously, abuse the confidential information provided by the defendant. The Safe Flight Court agreed with the defendant, finding the potential for abuse of the information and for competitive loss to be "real" in that Mr. Greene was actively engaged in the field of aeronautical engineering and the parties were direct competitors in the market for avionics

equipment. Id. The Court limited access to the confidential materials to trial counsel and approved outside experts, stating as follows:

> First, accepting that Mr. Greene is a man of great moral fiber, we nonetheless question his human ability during future years of research to separate the applications he has extrapolated from Sundstrand's documents from those he develops from his own ideas. In this regard, plaintiff has not assured the Court that Mr. Greene is willing to curtail his future research of wind shear equipment. Second, plaintiff's claim that Mr. Greene is "uniquely qualified" is speculative. Safe Flight has yet to investigate the availability of qualified outside experts. Third, while the inability of plaintiff's counsel to consult its President on the confidential materials may hamper plaintiff's ability to assess the economic merits of this litigation, the Court suggests that the plaintiff might, if necessary in the future, nominate a non-technical officer to make such a business calculation in light of his/her review of the confidential documents, rather than an officer who is also a working scientist of the corporation.

Id. at 22.

The Court finds Safe Flight to be distinguishable from the present case. In Safe Flight, the plaintiff sought access for the president of an active corporation that was in direct competition with the defendant. The president was actively involved in the field of aeronautical engineering and had plans to conduct further research in the relevant technical area in the future. In the present case, Dr. White is 62 years old and has been retired since 2001. In the past five years, he has not consulted or worked in the area of hard disk drives, with the exception of licensing and enforcing his own patents. Since 2002, Dr. White has had only one consulting engagement with a company that works in the field of flexible storage media and not in the field of hard disk drives. He consults with this company on average approximately three days per month and is paid an hourly fee for his services. Dr. White states that sliders for flexible storage media products are

4

"significantly different from sliders on hard disk drives" in that the former do not have vacuum cavities. Dr. White currently has no patent applications pending in the United States Patent Office or in any foreign patent office, and he has no plans to file any patent applications in the future. Dr. White states in his affidavit [Doc. 64] that for the duration of this litigation and for one year after the final conclusion of this litigation, he will not work on or consult in the area of hard disk drives. In a supplemental affidavit [Doc. 69], Dr. White further agrees to not consult in the area of data storage commencing on June 1, 2005 and continuing until the earlier of one year after the settlement of this case or the conclusion of the trial.

The Court finds that Standard Space Platforms Corp. v. United States, 35 Fed. Cl. 505 (Fed. Cl. 1996) is more analogous to the instant case. In that case, the plaintiff, an inactive corporation, sought to have its president and CEO, Mr. Perkins, participate in any initial review of the defendant's confidential documents. Id. at 508. Mr. Perkins, one of the co-inventors of the patented technology, stated in an affidavit that he was not actively involved with the plaintiff corporation; that he was currently employed as an insurance sales agent; and that he was not presently, and had no future plans for, inventing any other technology related to the spacecraft industry. Id. at 508-09. The Court found that the "defendant had failed to show that there is any greater risk that Mr. Perkins would misuse confidential information as compared to an aerospace or other technical expert" and thus granted him access to the confidential documents. Id. at 509. Similarly, in the instant case, Dr. White is retired and is no longer affiliated with any company in the field of hard disk drives. Moreover, Dr. White states in his affidavit that he has no patents currently pending and has no intention of filing any patent applications in the future.

While the Defendants have expressed concerns that their information could be applicable to Dr. White's current consulting work in the field of flexible storage media, the Court does not find that the Defendants have shown that the potential for such misuse is "real." See Safe Flight, 682 F. Supp. at 21. Indeed, the Court finds that the likelihood of harm to the Defendants as a result of disclosure of confidential information to Dr. White is minimal. See Telular Corp. v. Vox2, Inc., No. 00C6144, 2001 WL 641188, at **2-3 (N.D. Ill. June 4, 2001). Of course, Dr. White will be bound by the terms of the protective order entered in this case and will be subject to the contempt power of this Court should he violate its terms. The Court notes that in a previous lawsuit against Seagate Technology, Dr. White received and had access to Seagate's confidential information during that litigation, including Seagate's information on the geometry of the air bearing surfaces of its sliders for hard disk drives. Dr. White was subject to a stipulated protective order in that case, and it appears that he complied with it at all times. Dr. White states in his affidavit [Doc. 64] that he will comply with all provisions of the protective order that the Court enters in the present litigation.

For the foregoing reasons, Plaintiff's Motion for Protective Order [Doc. 37] is **GRANTED**. Defendants' Cross-Motion for Protective Order [Doc. 48] is **DENIED**. Dr. White shall be entitled to view confidential technical information produced by Defendants which relates to infringement or validity issues. Dr. White is bound by the terms of the Protective Order and is prohibited from any future use of any information received from the Defendants. Further, Dr. White's proposals (1) not to work or consult in the area of hard disk drives during the duration of this litigation and for one year after its conclusion and (2) not to consult in the area of data storage

6

Case 3:04-cv-00020   Document 83   Filed 06/03/05   Page 6 of 15   PageID #: 80

commencing on June 1, 2005 and continuing until the earlier of one year after the settlement of this case or the conclusion of the trial of this case are accepted and made part of this Order.

While Plaintiff has conceded that he does not personally need to see any of the Defendants' financial information, Defendants agree that if sales information is otherwise discoverable, Dr. White may personally have access to gross sales revenues and gross sales volumes for Defendants' hard disk drives. Accordingly, Plaintiff shall also have access to this confidential information as well.

## II.      Plaintiff's Motion to Compel

Dr. White moves for an Order overruling Defendants' General Objections Nos. 5 and 6 to Plaintiff's First Set of Requests for Production of Documents and Things and requiring Defendants to produce adequate responses to all of Dr. White's Requests generally, and specifically Requests Nos. 16-22, 27-33, 40, 41, and 44-46. Dr. White's Requests, which were served on September 17, 2004, seek information related to each and every hard disk drive and the sliders within them that the Defendants have manufactured, used, imported, exported, tested, offered for sale or sold worldwide since January, 1998. [Doc. 42 Attachment A].

The declaration of Dr. White, which was filed in support of this motion, sets forth the following facts. In the past, Dr. White has licensed nearly every major disk drive manufacturer, including Defendant Hitachi Metals, Ltd. and Hitachi Metals Electronics Sdn. Bhd. of Malaysia. Both of these licenses terminated in 1999. Dr. White also licensed the '519 patent to IBM, but without the right to assign the '519 license to any successor in the disk drive business. Dr. White alleges that in 2002, IBM and Hitachi announced that IBM would sell its hard disk drive business to Hitachi. Hitachi has been in the disk drive business for years and had even licensed the '519

7

patent earlier. [Declaration of James W. White In Support of Plaintiff's Motion to Compel Discovery (hereafter "White Decl.") ¶¶ 1, 5-8, 11].

Dr. White further asserts in his declaration that Defendants manufacture a large number of different hard disk drives, which are both sold individually and incorporated into a wide range of products, including personal computers. On December 12, 2002, Dr. White sent a letter to Defendants stating that the IBM license was not transferable to Hitachi and proposing a new license agreement. Defendants asserted the assignment of the IBM license and declined a new license. [White Decl. ¶¶ 10, 11].

Prior to filing the Complaint, Dr. White purchased two hard disk drives manufactured by Defendants. He reverse engineered both drives and concluded that they both contained sliders within the scope of the claims of the '519 patent. He performed this analysis personally, working full time over the course of four weeks. Dr. White subsequently performed a similar analysis on a third hard disk drive and determined that it too came within the scope of the claims of the '519 patent. Thus, to date, Plaintiff has specifically identified a total of three of Defendants' hard disk drives, which he alleges infringe the '519 patent.

In addition to reverse engineering these hard disk drives, Dr. White asserts that he was aware of the following facts prior to filing the Complaint: (1) that IBM had transferred its hard disk drive business to Defendants, and therefore, most of Defendants' hard disk drives were, in all likelihood, IBM designs; (2) IBM had been licensed under the '519 patent; (3) Hitachi subsidiaries had once been licensed under the '519 patent; (4) nearly all hard disk drive manufacturers were licensed under the '519 patent; and (5) it is extremely difficult, if not impossible, to design and manufacture a competitive hard disk drive with sliders without infringing the claims of the '519

8

patent. Based upon these facts and his reverse engineering of the two hard disk drives, Dr. White accused all of Defendants' hard disk drives of infringing the '519 patent.[2] [White Decl. ¶¶ 12, 13].

Thereafter, Dr. White served discovery requests upon Defendants seeking information related to each and every hard disk drive and the sliders within them that the Defendants have manufactured, used, imported, exported, tested, offered for sale or sold worldwide since January, 1998. Defendants responded to Plaintiff's Requests for Production of Documents on November 12, 2004. In their Response, Defendants made general objections as well as specific objections to numerous requests, refusing to respond as to any accused product other than the hard disk drives that Dr. White reversed engineered. Defendants further objected to producing discovery related to disk drives or sliders sold prior to December 12, 2002 (for Hitachi, Ltd.) or prior to the filing of the Complaint (for Defendants Hitachi Global Storage Technologies, Inc. and Hitachi Global Storage Technologies Netherlands B.V.), on the grounds that Dr. White had failed to mark the licensed products.

### A. Discovery Prior to Notice of Infringement

The Court will first address Defendants' objections to producing discovery related to hard disk drives or sliders sold prior to December 12, 2002, on the grounds that Plaintiff failed to mark the licensed products. Section 287(a) of the Patent Act (35 U.S.C. § 287(a)) provides that, absent marking the patented product, a patentee may not recover damages without proof that "the infringer was notified of the infringement." Plaintiff argues that 35 U.S.C. § 287(a) does not bar him

---

[2]Specifically, the Complaint asserts that "Defendants' infringing activities include, but are not limited to, making, offering for sale, selling, importing, operating, using or inducing others to use Defendants' computer hard disk drives, servo components, heads, or sliders coming within the scope of the claims of the '519 patent." [Complaint for Patent Infringement, Doc. 1 ¶10].

9

from obtaining the requested discovery because (1) a question of fact exists as to whether Defendants had notice prior to that date of the patent's existence and their infringement and (2) that even if notice was not given until December 12, 2002, and thus Plaintiff's damages were limited to that date forward, information regarding products prior to December 12, 2002 may still be relevant to liability issues. In support of this argument, Plaintiff relies upon Ampex Corp. v. United States, 207 U.S.P.Q. 440 (Ct. Cl. 1980).

Defendants counter that the facts are undisputed that the earliest that notice was given to any Defendant was December 12, 2002, and therefore, anything related to products sold prior to that date would not be relevant. In support of their argument, Defendants rely upon Amsted Industries Inc. v. Buckeye Steel Castings Co., 24 F.3d 178 (Fed. Cir. 1994). Defendants contend that the Ampex decision is not applicable to the present case, as Ampex involved an action against the United States and thus, § 287(a) was inapplicable.[3]

In Ampex, third-party defendant Memorex objected to providing discovery related to products supplied to the defendant prior to the date that actual notice was given. In addressing the applicability of § 287(a) to this issue, the Court stated as follows:

> Even if the court . . . should hold that 35 U.S.C. § 287 may be invoked either by the government or its suppliers, it should not be invoked during the liability phase of the action. It is merely a limitation on recovery (whether the recovery be called "damages" or "compensation") and should be taken into consideration only when and if liability is established and only the amount of recovery remains to be determined. To foreclose discovery during the liability stage might preclude the parties from discovering admissible evidence on

---

[3]Defendants also take issue with the fact that Ampex was rendered prior to the creation of the Federal Circuit. However, the Federal Circuit has adopted the decisions of the Court of Claims as its binding precedent. See South Corp. v. United States, 690 F.2d 1368, 1370-71 (Fed. Cir. 1982).

10

> liability issues such as laches, prior sale or public use, prior invention, etc. It should not be left to the defendant or third-party defendant to decide whether or not the information may lead to the discovery of admissible evidence on issues reaching far beyond that of quantum of recovery.

Id. at 442.

The Court finds the reasoning of Ampex to be persuasive in the instant case. It appears that questions of fact may exist as to when notice was actually given to Defendants. At the very least, the issue of notice is one that should be briefed and ruled upon in a summary judgment proceeding. See Gart v. Logitech, Inc., 254 F.3d 1334, 1339 (Fed. Cir. 2001) ("Like the determination of infringement, compliance with the marking statute, 35 U.S.C. § 287(a), is a question of fact."). Even if there was no dispute that December 12, 2002 was the earliest date of notice, the fact that Plaintiff's recovery of damages may be limited by that date should not preclude discovery of other relevant information or information which may lead to the discovery of admissible evidence related to products sold prior to the date of notice. For these reasons, Defendants shall be required to produce discovery related to each and every hard disk drive and the sliders within them that the Defendants have manufactured, used, imported, exported, tested, offered for sale or sold worldwide since January, 1998.

### B. Discovery Regarding All Accused Products

Plaintiff argues that he is entitled to discovery regarding all of Defendants' accused products, not just the three hard disk drives that he has specifically identified. Dr. White argues that he was not obligated to inspect every accused product manufactured by Defendants prior to filing the Complaint; moreover, he contends that due to the number of products and time required to inspect them, it would have been virtually impossible for him to do so. Dr. White contends that he

11

made an adequate pre-filing investigation of his infringement claims, and that such claims were sufficiently pled; as such, he argues, he is entitled to discovery as to all of "Defendants' computer hard disk drives, servo components, heads, or sliders coming within the scope of the claims of the '519 patent" referenced in the Complaint [Doc. 1].

Defendants argue that Plaintiff's discovery requests are overly broad and unduly burdensome; that the requests are a classic "fishing expedition"; and that discovery should be limited to only those products which Plaintiff has specifically identified in response to Defendant Hitachi GST's First Set of Interrogatories, *i.e.*, the Hitachi 7K60 Hard Disk Drive ("7K60"), the Hitachi DK32-18 MW Hard Disk Drive ("DK32-MW"), and the Hitachi DK23-10F Hard Disk Drive ("DK23-10F"). Defendants complain that Plaintiff has failed to set forth a sufficient factual basis to justify such broad discovery regarding virtually all of Hitachi's hard disk drive products.

"In order to state a claim of patent infringement, a plaintiff must allege that the defendant makes, uses, offers to sell, or sells the patented invention within the United States, during the term of the patent, and without the authority of the patent holder." Advanced Cardiovascular Systems, Inc. v. SciMed Life Systems, Inc., 989 F. Supp. 1237, 1249 (N.D. Cal. 1997). Specific facts regarding alleged infringement activities or specific infringing products are not required in order to state a claim for patent infringement. See One World Technologies, Ltd. v. Robert Bosch Tool Corp., No. 04C0833, 2004 WL 1576696, at *2 (N.D. Ill. July 13, 2004) (finding allegation that "making, using, selling, and/or offering to sell products falling within the scope of [the patent's] claims" sufficiently described infringement activities so as to put defendant on notice of alleged infringement activities); OKI Electric Industry Co. v. LG Semicon Co., No. CIV. 97-20310SW, 1998 WL 101737, at *3 (N.D. Cal. 1998) (finding allegation that "making, importing, offering for

12

sale, selling, and/or using devices that embody the patented methods" sufficient to state a claim of patent infringement as to all products manufactured and sold by the defendant), aff'd, 243 F.3d 559 (Fed. Cir. 2000). Thus, while Plaintiff does not identify any specific products in his Complaint, he has sufficiently stated a claim for infringement under the Rules of Civil Procedure.

Some courts have promulgated special local rules which specifically apply to patent cases and provide specific guidelines for the disclosure of infringement contentions. For example, Local Rule 3-1 of the Northern District of California requires a party claiming patent infringement to serve, within ten days of the Initial Case Management Conference, the other parties in the case with a "Disclosure of Asserted Claims and Preliminary Infringement Contentions," which must contain, among other things, an identification of "each accused apparatus, product, device, process, method, act, or other instrumentality . . . of each opposing party of which the party is aware." N.D. Cal. LR 3-1(b) (emphasis added). The rule further requires the identification to "be as specific as possible" and that each product, device or apparatus be "identified by name or model number, if known." Id. (emphasis added). Obviously, the Local Rules of the Northern District of California are not applicable in the present case. However, the Court finds Rule 3-1 to be instructive in this case, as the rule recognizes that, at least at the outset of litigation, the party claiming infringement may not be able to specifically identify each and every product of the opposing party which infringes the patent. Specific names and model numbers may not be known by the plaintiff at the time that the complaint is filed, and it may be that the only way to glean such information is to obtain it from the defendant itself.

"Clearly discovery is allowed to flesh out a pattern of facts already known to a party relating to an issue necessarily in the case." Micro Motion, Inc. v. Kane Steel Co., 894 F.2d 1318,

13

1326 (Fed. Cir. 1990) However, discovery is not permitted based upon a party's "mere suspicion or speculation"; a reasonable inquiry must first be made. Id.; see also Fed. R. Civ. P. 26(g)(1). "The legal tenet that relevancy in the discovery context is broader than in the context of admissibility should not be misapplied so as to allow fishing expeditions in discovery." Piacenti v. General Motors Corp., 173 F.R.D. 221, 224 (N.D. Ill. 1997). While the discovery process cannot be instituted on mere speculation, so long as the plaintiff has made reasonable inquiry and has a sufficient basis to believe that all of the defendants' products fall within the scope of the patent's claims, it seems reasonable to permit the plaintiff to utilize the discovery process to assist him in identifying the specific accused products.

In the present case, the Court is satisfied that the Plaintiff has made a "reasonable inquiry" prior to propounding the discovery to the Defendants. The discovery requests seek information relevant to the claims asserted in the Complaint. See Fed. R. Civ. P. 26(b)(1) (stating that parties to a civil action "may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party"). Therefore, the Court finds that Plaintiff is entitled to discovery regarding each and every hard disk drive and the sliders within them that the Defendants have manufactured, used, imported, exported, tested, offered for sale or sold worldwide since January, 1998.

In the interest of efficiency, and to avoid the possibility of unnecessary document production, as well as out of concern regarding the prior protective order issue, the Court finds that, once the stay has been lifted and discovery commences, the parties should conduct this discovery in stages. Therefore, Defendants shall be required to first produce for inspection, but not copying, all product specifications, schematics, drawings, and/or design diagrams for each and every hard

14

disk drive device having a head or slider manufactured, used, imported, exported, tested, offered for sale or sold worldwide by Hitachi and any of its subsidiaries after January, 1998. After the Plaintiff has had the opportunity to inspect but not copy these documents, Plaintiff then should, within fifteen (15) days thereafter, specifically identify, by name and/or model number, each product which Plaintiff alleges infringes the claims of the '519 patent and for which discovery (including the actual production of these specifications, schematics, drawings, and/or design diagrams) is sought. Thereafter, Defendant shall have thirty (30) days to respond to the Plaintiff's requests for production with respect to each of the identified accused products.

### III. Plaintiff's Motion for Expedited Hearing

By virtue of the Court's rulings on the Motion for Protective and Motion to Compel, Plaintiff's Motion for Expedited Telephonic Status Conference [Doc. 68] is rendered moot and shall be **DENIED AS MOOT**.

**IT IS SO ORDERED.**

ENTER:

   s/ C. Clifford Shirley, Jr.
United States Magistrate Judge